UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER FRANK-DIGIOVANNI, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. 1:12-1605 |
| | : | |
| v. | : | |
| | : | (MANNION, D.J.)[1] |
| CAROLYN W. COLVIN, | : | (CARLSON, M.J.) |
| Acting Commissioner | : | |
| of the Social Security | | |
| Administration, | : | |
| | : | |
| Defendant | : | |

**M E M O R A N D U M**

Pending before the court is a report, (Doc. 10), recommending that plaintiff's appeal from the final decision of the Commissioner of Social Security be denied. A Magistrate Judge reviewed the record in this case pursuant to 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act, ("Act"). 42 U.S.C. §§401-433, 1381-1383f. The plaintiff, Jennifer Frank-Digovanni, has filed objections to the report. (Doc. 23). For the following reasons, the court **ADOPTS in part** the report and recommendation. As such, the case will be remanded to the Commissioner for further proceedings consistent with this

---

[1]This case was initially assigned to the Hon. Sylvia H. Rambo and was reassigned to the undersigned by verbal order on November 11, 2013.

opinion.

## I. STANDARD OF REVIEW

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (*citing United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also *Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (*citing Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999), *Johnson*, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national

economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

## II.     RELEVANT MEDICAL EVIDENCE

The report and recommendation contains an exhaustive review of the plaintiff's lengthy medical history. The plaintiff did not file any objection to these factual determinations, so they will be adopted. Given the limited nature of the plaintiff's objections, only a brief discussion of the relevant medical background is necessary.

The plaintiff relies primarily on Dr. Gensemer's determination that the plaintiff had "moderate" limitations in one social category: her ability to get along with other people without distracting them or showing behavioral extremes. (TR. 582). In all other categories, the plaintiff had no restrictions. In his explanation of findings, Dr. Gensemer specifically notes "The claimant can perform simple, routine repetitive work in a stable environment . . . Her frustration tolerance is low. She is socially isolated. She is capable of asking simple questions and accepting instructions." (TR. 583).  The ALJ adopted most of Dr. Gensemer's conclusions, noting the plaintiff "has no more than

moderate limitations in social functioning" and giving Dr. Gensemer's opinion great weight when determining the plaintiff's residual functional capacity. (TR. 21, 26).

There was also evidence from a Social Security Representative and the plaintiff's husband that the ALJ did not discuss or acknowledge. The Social Security Representative, during their interview, noted the plaintiff was anxious, had visibly shaking hands, spoke softly, had to repeat herself, and was tearful when talking about her husband. (TR. 132). The letter from her husband details daily panic attacks, inability to leave her bed or home at times, her asking "a hundred" questions about medicine she is taking, her inability to eat more than small amounts of food, and her pain from fibromyalgia. (TR. 918-19).

Lastly, the ALJ did not address the plaintiff's abdominal pain at steps two and three of the evaluation process. (Doc. 22; TR. 20). However, the ALJ did discuss the plaintiff's extensive gastrointestinal medical history in exhaustive detail in his ruling. (TR. 25-26). He specifically noted that the plaintiff underwent two surgeries in 2008, but that overall her treatment has been routine and conservative since that time. (TR. 25). Moreover, the plaintiff has had a wide series of medical evaluations performed after those surgeries

that had generally normal findings, despite the plaintiff's continued complaints of abdominal pain. (TR. 25-26). The plaintiff acknowledges that her doctors could not determine the exact etiology of her alleged ongoing abdominal issues. (Doc. 23, p. 7). The fact remains that the plaintiff's subjective complaints of pain were not supported by any medical diagnosis.

As to the plaintiff's weight loss, the court agrees with Judge Carlson that any suggestion by the ALJ that this was possibly voluntary is best described as a gratuitous and unnecessary statement. (TR. 26). Despite this misstatement, a broader view of the record shows that the ALJ appropriately evaluated the abdominal issues based upon the extensive medical evidence in the record.

## III.   DISCUSSION

The plaintiff raises three issues in her objection, which are essentially identical to three of the issues raised in her initial appeal: (1) that the ALJ failed to include the plaintiff's moderate social limitations in his hypothetical questioning and residual functional capacity finding; (2) the ALJ ignored relevant evidence; and (3) that the ALJ did not properly evaluate the plaintiff's abdominal impairment. The court will address each in turn.

### A. The ALJ's Hypothetical Question Did Not Adequately Addressed the Limitations Noted by Dr. Gensemer

The ALJ's hypothetical question to the vocational expert included the following relevant limitations:

> With respect to the work activity, I would state that it should generally be of an unskilled nature set forth in a stable, work environment, not subject to any more than occasional changes and that the individual not be required to make independent judgments or decisions within the work place and also work be considered to be more of a lower stress or moderate stress work environment, I should say low stress at best, low moderate stress work environment . . . .

(TR. 77). The ALJ does not make any specific notation of a "moderate" social limitation and only partially mirrors the limitations contained in Dr. Gensemer's report, findings, and notes. (TR. 583). The ALJ gave substantial weight to this opinion in determining the plaintiff's residual functional capacity. (TR. 21, 26).

An ALJ's hypothetical must "adequately capture and recite all of [a plaintiff's] mental impairments and the limitations caused by those impairments." *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004). In *Ramirez*, the Third Circuit remanded a case for further hearings when the ALJ found the plaintiff had problems with maintaining pace while working, but failed to include that limitation in the hypothetical question. *Id.* at 554.

The plaintiff points to the moderate social limitations in Dr. Gensemer's

7

evaluation that were not accounted for in the hypothetical. The court agrees that the ALJ did not properly account for such limitations in his question. The language of the hypothetical does not sufficiently mirror Dr. Gensemer's findings of social isolation and moderate issues with personal interaction, all findings credited by the ALJ. (TR. 583). The ability to ask questions, accept instructions, and carrying out those instructions require some level of limited social interaction, but as in *Ramirez*, "the ALJ's hypothetical did not adequately capture and recite all of [the plaintiff's social] impairments and the limitations caused by those impairment." [372 F.3d at 555](). At least one of the jobs cited by the vocational expert, ticket taker, would involve interaction with the general public. Moreover, there was no discussion as to how much interaction the plaintiff would have with co-workers and supervisors. The plaintiff's moderate social limitations were not properly addressed and remand is appropriate.

**B.    The Additional Lay Evidence Should be Evaluated**

The plaintiff points to three pages of lay-person observations as grounds for remand. These observations come from a Social Security Representatives report and the plaintiff's husband. The plaintiff points the

court to *Burnett v. Commissioner of Social Sec. Admin.*, 200 F.3d 112 (3d Cir. 2000) as relevant to this case. There, an ALJ ignored and failed to address both relevant medical evidence and relevant lay-person testimony, taken under oath and before the ALJ, about a plaintiff's disability. Regardless of the nature of the testimony, "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3c Cir. 1999)(*citing* 20 C.F.R. §404.1529).

     As to the plaintiff's husband's accounts, he discussed specific observations of the outward manifestations of her social problems. He notes the plaintiff refuses to leave the house, she stays in bed for hours after waking up, she cries often, and asks excessive questions about her medication. (TR. 918). The Commissioner's own Social Security Representative's observations included the plaintiff physically shaking, crying during the interview, and being difficult to hear. (TR. 132). These observations regarding the plaintiff's physical manifestations of her social limitations should be considered in light of all the relevant medical evidence. "[A]though allegations of pain and other subjective symptoms must be consistent with objective medical evidence, the ALJ must still explain why he is rejecting the testimony." *Burnett*, 220 F.3d at 122 (citations omitted). The language of *Burnett* is broad and given the above

discussion of the incomplete hypothetical, the ALJ should also address this evidence and incorporate it into his findings as necessary. 220 F.3d at 122.

### C. The ALJ Thoroughly Discussed and Accounted for the Plaintiff's Unexplained and Undiagnosed Abdominal Pain

The plaintiff next contends the ALJ did not properly account for her reported abdominal pain. It is true that the ALJ did not explicitly discuss the abdominal pain issues at step two and three, however, he dedicated nearly a full page of his ruling to detailing her pain and treatment history. (TR. 25-26). Despite abundant treatment after her two surgeries, none of the doctors were able to make a determination as to what caused the plaintiff's reported pain.

"No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (3d Cir. 1989). It is unclear what the ALJ could do to further evaluate the plaintiff's continued subjective reports of abdominal pain. The plaintiff admits that the physician's she saw "could not identify the exact etiology of her continued abdominal pain." (Doc. 23, p. 7). The single doctor who identified a possible cause stands alone among the abundant other

medical evidence of record. (TR. 61-71; 455-62; 537; 658-68; 688-91; 702-06; 714-23; 746-55; 827-37; 850-90).

In sum, the ALJ's in-depth discussion of the plaintiff's abdominal complaints sufficiently accounted for the alleged impairment, but found no medical diagnosis or evidence to support her subjective claims. (TR. 25-26). As such, failure to include evaluation of her abdominal pain in steps two and three was harmless error at best.

## IV.   CONCLUSION

In light of the foregoing, the court **ADOPTS in part** the report and recommendation. The case will be remanded to the Commissioner to reformulate the hypothetical question and to address the observations from the plaintiff's husband and the Commissioner's own Social Security Representative.

A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION
United States District Judge**

**Date: May 22, 2014**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-1605-01.hhs-REMAND.wpd

11